M&A Beauty, Inc. v State of New York (2025 NY Slip Op 51677(U))

[*1]

M&A Beauty, Inc. v State of New York

2025 NY Slip Op 51677(U)

Decided on August 28, 2025

Court Of Claims

Mejias-Glover, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 28, 2025
Court of Claims

M&A Beauty, Inc. d/b/a Christopher Street Salon, Movant,

against
The State of New York,[FN1] Defendant.

Claim No. None

For Movant:
RUSKIN MOSCOU FALTISCHEK, P.C. 
By: Jonathan C. Sullivan, Esq. 
For Defendant:
HON. LETITIA JAMES, NYS ATTORNEY GENERAL
By: Kimberly A. Kinirons, Esq., AAG

Linda K. Mejias-Glover, J.

M&A Beauty, Inc. d/b/a Christopher Street Salon ("Movant") moves by Notice of Motion filed with the Clerk of the Court on July 3, 2025, seeking an order pursuant to §10 (6) of the New York State Court of Claims Act 
for permission to file and serve a late claim. Movant annexed a proposed Notice of Claim,[FN2]
sworn to on June 25, 2025, to its motion, and the motion [*2]has been fully briefed.
 RELEVANT PROCEDURAL BACKGROUND
Movant served a Notice of Claim, sworn to on November 15, 2024 (the "Notice of Claim"), on the New York State Department of State, the New York State Department of Transportation ("NYSDOT"), and the NYSDOT Regional Office, by certified mail, return receipt requested instead of the Attorney General as required by Court of Claims Act §10(3-a), which provided a full recitation of the facts and circumstances related to a flood that occurred between August 18 and 19, 2024, identified the specific categories of damages suffered by Movant, but did not include specific dollar amounts for categories of damages originally identified in the Notice of Claim. The Notice of Claim contained the following information: (i) Movant's name and post-office address; (ii) the name and address of Movant's attorney; (iii) Defendant's addresses; iv) the nature of the claim; (v) the time when, the place where and the manner in which the claim arose, being as precise as possible; and (vi) the items of Movant's damage, and included photos showing the flood both inside and outside the Center, and Movant's damaged personal property.
On February 20, 2025, Movant filed a motion seeking leave to file a late claim in the Court of Claims captioned M&A Beauty, Inc. v. New York State and New York State Department of Transportation (Motion No. M-101885). The motion was withdrawn by Notice of Discontinuance without Prejudice filed with the Clerk of the Court on May 20, 2025.

RELEVANT FACTUAL ALLEGATIONS
Marina Shalamov, a corporate officer and authorized representative of Movant, alleges that in the late hours of Sunday, August 18, 2024, and continuing into the morning of Monday, August 19, 2024, a rainstorm occurred in Commack, New York, which produced 8.82 inches of rainfall, as reported by the National Weather Service. Movant asserts that during this storm, rainwater overflowed from an adjacent sump and drainage area, alleged to be owned, maintained, and managed by Defendant at or near the overpass by Exit 43 of the Northern State Parkway, and that such overflow caused flooding at Movant's leased property located at 33 Vanderbilt Motor Parkway, Commack, New York. Movant alleges that this property, situated approximately 15 yards from the sump and drainage area, sustained significant flooding damage as a result.
Movant claims to have suffered financial losses, property damage, and related harms as a result of the flooding, and further alleges that such damages were avoidable and attributable to Defendant's negligence and failure to properly maintain the sump and drainage area. According to Movant, Defendant failed for nearly two decades to clean, maintain, service, or landscape the sump and drainage facilities, permitting them to become overgrown and incapable of fulfilling their intended purpose of preventing flooding. Movant further alleges that following the storm, Defendant undertook remedial efforts by clearing trees and brush from the area, thereby revealing an access road that had previously been obscured by the overgrowth.
It is undisputed that on August 23, 2024, Governor Kathy Hochul issued Executive Order No. 39, declaring a disaster emergency in Suffolk County following the rainfall of August 18-19, [*3]2024.[FN3]

POINTS OF COUNSEL
In support of the motion, Movant's counsel argues, as an initial matter, that Defendant undeniably received the Notice of Claim, as evidenced by certified mail receipts signed by Defendant. Movant contends that, accordingly, Defendant had notice of the claim and an opportunity to investigate the facts and circumstances of the alleged flooding upon receipt of the Notice of Claim. Movant further asserts that Defendant also had actual notice of the essential facts underlying the claim, and an opportunity to investigate, because Defendant itself undertook cleanup of the sump and drainage area sometime after August 19, 2024.
Movant explains that Defendant's counsel objected to the sufficiency of the Notice of Claim on the ground that it failed to adequately allege damages because it did not include specific dollar amounts for each category of damages. After consulting with Defendant's counsel, Movant agreed to withdraw Motion No. M-101885 without prejudice and to refile with further detail concerning damages. According to Movant, the parties agreed that withdrawal and refiling would permit a more orderly and efficient resolution of the issues raised in Movant's application. Movant therefore commenced the present proceeding, seeking permission to file the Proposed Notice of Claim, which specifies dollar amounts for the categories of damages originally identified in the Notice of Claim. Movant argues that there will be no prejudice to Defendant if permission is granted because the Notice of Claim already provided a full recitation of the facts and circumstances necessary to permit Defendant to investigate the flooding event of August 18—19, 2024, and identified the categories of damages suffered by Movant. The proposed Notice of Claim, Movant contends, merely quantifies those damages and does not assert new causes of action or new claims against Defendant.
Movant further argues that Movant has a meritorious cause of action arising from Defendant's negligence. Counsel asserts that Defendant failed to perform any maintenance, cleaning, servicing, inspecting, surveying, landscaping, or otherwise manage the sump and drainage area for nearly two decades. Counsel contends that such disregard violated NYSDOT's own published highway maintenance guidelines, which state that "Sumps (termed catch basins in the references) require periodic cleaning to be effective" (NY St Cts Elec Filing [NYSCEF] Doc No 8, Exh F, DOT Highway Design Manual § 8.7.6.1). Counsel also cites additional provisions which provide that "[a]ll drainage facilities should be maintained so that there is structural soundness and each facility is clean to allow free flow of water . . . Sumps should be cleaned when 50 percent filled to allow free and efficient flow with adequate storage for debris" ([ NYSCEF] Doc No 9, Exh G, Highway Maintenance Guidelines § 6.3500).
Finally, Movant contends that no other remedy is available. Because Defendant owns and manages the sump and drainage area at issue, there is no private entity against whom Movant may seek recourse. Counsel further notes that disaster emergency relief programs announced by Governor Hochul and the Federal Government extend only to homeowners, not businesses, and that both Movant's insurance carrier and landlord have denied reimbursement.
In opposition to the motion,[FN4]
 Defendant argues that, although Movant acknowledges the severity of the storm—an act of God—they nevertheless seek to hold the State of New York responsible for the resultant flooding. Defendant contends that, whether pursued through the initiation of a claim or by motion practice, Movant should not be permitted to recover under these circumstances.
Defendant concedes that the instant motion is timely. Defendant notes that, pursuant to Court of Claims Act § 10 (6), a motion seeking permission to file a late claim may be made "at any time before an action asserting a like claim against a citizen of the state would be barred under the provisions of article two of the civil practice law and rules." Because CPLR 214 provides a three-year statute of limitations for negligence claims seeking recovery for property damage, the motion falls within the permissible time frame.
Defendant further argues, however, that Movant has failed to demonstrate a reasonable excuse for the untimely filing. Defendant maintains that Movant's apparent excuse—that the Notice of Claim was served on the New York Department of State and NYSDOT—is unavailing. Defendant notes that the Notice of Claim was served on NYSDOT on November 21, 2024, which itself was beyond the ninety-day statutory period. Defendant emphasizes that service is complete only when received by the Attorney General's Office (Court of Claims Act § 11 [a] [i]). Thus, whether Movant characterizes the failure as law office error or ignorance of the statutory requirements, Defendant asserts that the excuse cannot be deemed reasonable (see Decker v State of New York, 164 AD3d 650 [2d Dept 2018]).
With respect to the related factors of notice, opportunity to investigate, and prejudice, Defendant acknowledges that Movant is correct in asserting that the State was aware of the severity of the storm and the widespread flooding it caused. Defendant concedes that the Governor declared a state of emergency and that NYSDOT commenced an investigation shortly thereafter. Accordingly, Defendant concedes that these factors weigh against the State and in favor of Movant.
Nevertheless, Defendant contends that the factual allegations do not support a viable claim against the State. Relying on Wohl v City of New York, 45 Misc 3d 1217[A] (Sup Ct, Richmond County 2014), Defendant argues that claims involving drainage facilities are subject to well-established principles: (i) municipalities are protected by governmental immunity against claims alleging negligent design of storm drainage systems; (ii) liability may only attach where the State has notice of a dangerous or defective condition and fails to make reasonable efforts to maintain, inspect, or repair the drainage system; and (iii) municipalities cannot be held liable for flooding caused by excessive or extraordinary storms that could not have been prevented by existing drainage facilities. Defendant underscores that Movant, despite operating its business at the location for nine years, has not alleged that the drainage basin ever flooded prior to this event.
Defendant further relies on the Affidavit of James Fonda, NYSDOT Transportation Maintenance Engineer 2, Region 10, which asserts that "there are no circumstances or conditions under which flooding would have been prevented by Recharge Basin SP-12 given the amount of rainfall which occurred in this area on August 18-19, 2024 in region 10, as the rainfall volume [*4]was approximately one million cubic feet greater in volume than the capacity of the receiving recharge basin."
Finally, Defendant disputes Movant's contention that no alternative remedies are available. Defendant argues that Movant's landlord and insurer are not the only potential sources of recovery, as there are "multiple potential contributors" to the flooding event, including Suffolk County (as owner of Commack Road and Vanderbilt Motor Parkway), the Town of Huntington (as owner of certain roadways and a recharge basin in the vicinity), and private property owners such as the owners of the Bonwit Village Shopping Center and the Northshore Farms Shopping Center located across the street from Movant's business.
In further support of the motion, Movant argues that the Court should grant leave to file a late claim because Defendant concedes that it had timely notice of the underlying events, as well as an opportunity to investigate the facts and circumstances giving rise to the claim. Movant emphasizes that Defendant does not dispute that no prejudice will result from the filing of a late claim, nor does Defendant contest that the present application was timely made. Movant further notes that the Court of Claims has "broad discretion" in considering a motion under Court of Claims Act § 10 (6), that the statutory factors are not exhaustive, and that "the presence or absence of any one factor is not controlling."
Movant contends that the Court is not precluded from granting the motion even if it were to determine that Movant's delay was inexcusable, because the delay was minimal and, in any event, the Court of Claims has routinely granted late claim applications where the claimant mistakenly served the wrong State entity.
Movant further argues that it has satisfied the statutory requirement that the claim "appears to be meritorious" under Court of Claims Act § 10 (6). Relying on this Court's decision in Anderson v State of New York, Ct Cl, Aug. 7, 2024, Mejias-Glover, J. claim No. NONE, Motion No. 100652, UID No. 2024-060-056, Movant asserts that the appropriate inquiry is whether the proposed claim is "patently groundless, frivolous, or legally defective, and that there is reasonable cause to believe that a valid claim exists." Movant contends that it has met this standard, particularly given that discovery has not yet taken place. Addressing Defendant's reliance on Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1 (Ct Cl 1977), Movant points out that even in Santana the Court made clear that a claimant "is not required to definitively establish the merits of [its] claim or overcome all legal [obstacles]," but need only show that "there is reasonable cause to believe a valid cause of action exists," as the ultimate merits of the claim are to be determined in due course.
Movant asserts that the proposed claim adequately sets forth a cause of action for property damage by showing: (i) Defendant, as owner, owed a duty to maintain the sump and drainage area; (ii) Defendant breached that duty by failing to maintain those facilities for nearly two decades, as acknowledged by a NYSDOT engineer (Shihab Uddin); and (iii) Movant's damages were caused by this failure. Movant notes that Defendant does not deny its obligation to maintain the sump and drainage area, nor does Defendant contend that it inspected, cleaned, or repaired those facilities during the relevant period. Instead, Defendant relies on the assertion that the flooding was caused by an extraordinary storm—an act of God—and could not have been prevented even with proper maintenance.
In response, Movant challenges the affidavit of James Fonda, a DOT engineer, upon which Defendant relies. Movant argues that to the extent Mr. Fonda offers an expert opinion, it is without foundation and based on inadmissible hearsay. Movant characterizes the affidavit as [*5]speculative and conclusory, noting that Mr. Fonda neither visited the site nor demonstrated familiarity with the sump and drainage area prior to the storm. Movant also observes that Mr. Fonda failed to attach the materials he purportedly relied upon—including GIS maps and Google Earth images—and did not consider whether proper maintenance could have mitigated or lessened the flooding or altered the direction of floodwaters toward Movant's property.
Movant further contends that the cases cited by Defendant are inapposite because they were decided on motions for summary judgment, where a higher evidentiary burden applies. Movant emphasizes that it need not establish a prima facie entitlement to judgment at this stage, but only that its claim "appears to be meritorious." Movant asserts that it should be permitted to pursue discovery and retain experts of its own to further substantiate its claims, particularly since Defendant does not dispute that it failed to maintain the sump and drainage area.
Finally, Movant argues that it has no alternative remedies asserting that no other entities—including Suffolk County, the Town of Huntington, or private property owners identified by Defendant—bear responsibility for maintaining the sump and drainage area at issue, which is owned and controlled by the State. Movant contends that Defendant has not explained how or why those entities could be legally responsible for the flooding. Accordingly, Movant maintains that the absence of any other viable remedy weighs in favor of granting the motion.
LAW AND ANALYSIS
The State's Waiver of Immunity Under Section 8 of The Court of Claims Act
The State's waiver of immunity under Section 8 of the Court of Claims Act is conditioned upon a movant's compliance with specific conditions set forth in article II, including the time limitations set forth in section 10 (see, Alston v State of New York, 97 NY2d 159 [2001]). These requirements must be " 'strictly construed and a failure to comply therewith is a jurisdictional defect compelling the dismissal of the claim' " (Hargrove v State of New York, 138 AD3d 777, 777-778 [2d Dept 2016], quoting Welch v State of New York, 286 AD2d 496, 497-498 [2d Dept 2001]; see Finnerty v New York State Thruway Auth., 75 NY2d 721, 722-723 [1989]).
The Sufficiency of the Proposed Claim Under Court of Claims Act § 11 (b)
"Facts stated in a motion for leave to file a late claim ... are deemed true for purpose of [the] motion, when not denied or contradicted in opposing affidavits" (Sessa v State of New York, 88 Misc 2d 454, 458 [Ct Cl 1976], affd 63 AD2d 334 [3d Dept 1978], affd 47 NY2d 976 [1979]; see Schweickert v State of New York, 64 AD2d 1026 [4th Dept 1978]; Cole v State of New York, 64 AD2d 1023 [4th Dept 1978]).
It is well-established that the failure to satisfy the substantive pleading requirements of Court of Claims Act § 11 (b) is a jurisdictional defect that requires dismissal of the claim (see Hargrove, 138 AD3d at 777; Kolnacki v State of New York, 8 NY3d 277, 280-281 [2007]; Lepkowski v State of New York, 1 NY3d 201, 206-207 [2003];Czynski v State of New York, 53 AD3d 881, 882-883 [3d Dept 2008], lv denied 11 NY3d 715 [2009]).
Motion to File a Late Claim
Court of Claims Act Section 10 (6) grants the Court the discretion to allow the filing of a late claim upon consideration of all relevant factors, including whether the movant's delay was excusable, whether defendant had timely notice of and the opportunity to investigate the pertinent allegations, whether defendant would suffer substantial prejudice should the motion be granted, whether the proposed claim has the appearance of merit and whether the movant has an alternate remedy. Additionally, an application pursuant to the statute must be made prior to the [*6]expiration of the underlying statute of limitations, and it must be supported by a proposed claim that complies with the pleading requirements of Court of Claims Act § 11(b). It is "well settled that in deciding whether to grant an application for leave to file a late claim, the presence or absence of any one of these factors is not controlling" (Weaver v State of New York, 112 AD2d 416, 417 [2d Dept 1985]).
Timeliness of the Motion Under Court of Claims Act §10 (6)
The threshold issue on a motion for permission to file a late claim is whether the application was made prior to the expiration of the applicable statute of limitations set forth in CPLR Article 2 (Court of Claims Act § 10 [6]). The statute of limitations for a negligence cause of action for property damage is three years (CPLR 214 [4]). In the present matter, it is undisputed that the motion was made within that limitations period and is therefore timely.
Consideration of the Six Factors Under Court of Claims Act § 10(6)
Whether the Delay in Filing was Excusable
The appellate courts have held that barring very unusual circumstances, it has been held that ignorance of the law, lack of access to a law library, and lack of legal assistance are not viable excuses for filing a late claim (Matter of Sandlin v State of New York, 294 AD2d 723 [3d Dept 2002] lv. dismissed, 99 NY2d 589 [2003]; Matter of Thomas v State of New York, 272 AD2d 650, 651 [3d Dept 2000]; Matter of P.A. v State of New York, 277 AD2d 671, 672 [3d Dept 2000]). Movant has not provided sufficient information to the Court to find the existence of any unusual circumstances to excuse filing a late claim. Accordingly, this factor weighs in favor of denying the motion.
Whether the Defendant Had Notice and the Opportunity to Investigate, and Whether the Defendant Will Suffer Substantial Prejudice
The next three factors to be addressed—whether the defendant had notice of the essential facts constituting the claim, whether the defendant had an opportunity to investigate the circumstances underlying the claim, and whether the failure to file or serve a timely claim resulted in substantial prejudice to the defendant—are interrelated and will be considered together.
Here, there has been no satisfactory showing that the Defendant lacked the opportunity to investigate or has or will suffer substantial prejudice if the motion is granted. As for whether the Defendant had notice, the Court is satisfied that it did, as well as an opportunity to investigate the allegations. Accordingly, these factors weigh in favor of granting the motion.
Whether Movant has Another Available Remedy
With respect to the fifth factor to be considered—whether the Movant has another remedy available, neither the Claim nor the motion papers provide sufficient information for the Court to make such a determination at this time. Accordingly, this factor weighs in favor of denying the motion.
Whether the Claim has the Appearance of Merit
The sixth and most important factor to be considered is whether the proposed claim appears meritorious, since it would be futile to permit a meritless claim to proceed (Matter of Santana v New York State Thruway Auth., 92 Misc 2d *1, *10 [Ct Cl 1977]). In order to establish a meritorious claim, a movant must demonstrate that the proposed claim is not patently groundless, frivolous, or legally defective, and that based upon the entire record, including the proposed claim and affidavits, there is reasonable cause to believe that a valid claim exists (id. at *11). There is a heavier burden on a party moving for permission to file a late claim than on a [*7][claimant] who has complied with the provisions of the Court of Claims Act (see id. at *11-*12; see also Nyberg v State of New York, 154 Misc 2d 199 [Ct Cl 1992]).
Measured against this standard, the Court finds that Movant has met its burden. Upon consideration of the parties' submissions and the applicable legal standards, the Court concludes that Movant has demonstrated that its proposed claim "appears to be meritorious" within the meaning of Court of Claims Act § 10 (6).
The proposed claim adequately alleges the elements of negligence by setting forth that: (i) Defendant, as the owner of the sump and drainage area, owed a duty to maintain those facilities in a safe and serviceable condition; (ii) Defendant breached that duty by failing to maintain, clean, or inspect the sump and drainage area for nearly two decades, as acknowledged by NYSDOT, Shihab Uddin; and (iii) Movant's damages were proximately caused by Defendant's failure to perform those maintenance obligations. Importantly, Defendant does not deny its duty to maintain the sump and drainage area, nor does it contend that it undertook any inspection, maintenance, or repair during the relevant period. Instead, Defendant relies principally upon the assertion that the flooding was caused by an extraordinary storm—an act of God—that could not have been prevented even with proper maintenance.
While Defendant's assertion, if substantiated, may ultimately provide a defense to liability, it does not render Movant's proposed claim patently groundless or frivolous. Questions remain as to whether Defendant's prolonged failure to maintain the sump and drainage area exacerbated or contributed to the extent of flooding and damage sustained by Movant's property. At this preliminary stage, and without the benefit of discovery or expert testimony, the Court cannot conclude that Defendant's asserted defense eliminates the reasonable cause to believe that a valid claim exists. Accordingly, this factor weighs in favor of granting the motion.
Weighing all six factors together, the Court will grant Movant leave to file a late claim.
Accordingly, it is hereby
ORDERED, that Motion No. M-102436, seeking leave to file a late Claim is GRANTED; and it is further
ORDERED, that Movant is directed to file and serve the proposed Claim (properly denominated as a "Claim," rather than a "Notice of Claim") within forty (40) days of the filing of this Decision and Order, in strict conformity with the requirements of Court of Claims Act §§ 10, 11, and 11-a.
Dated: August 28, 2025
Hauppauge, New York
HON. LINDA K. MEJIAS-GLOVER,
Judge of the Court of Claims
Papers Read on this Motion:
1. Notice of Motion for Leave to File and Serve a Late Claim, Affirmation in Support of Claimant's Motion for Leave to File and Serve a Late Claim with exhibits, Affirmation of Marina Shalamov in Support of Claimant's Motion for Leave to File and Serve a late Claim with Exhibit, Memorandum of Law In Support of Claimant's Motion for Leave to File and Serve a Late Claim, Proposed Claim
2. Affirmation in Opposition to Motion to File a Late Claim, Exhibits Annexed
3. Affirmation in Further Support of Claimant's Motion for Leave to File and Serve a Late Claim

Footnotes

Footnote 1:The Court of Claims is a court of limited jurisdiction insofar as its reach extends only to New York State and certain public authorities as defendants (see Court of Claims Act § 9; Kevin A. Reilly, Practice Commentaries, McKinney's Cons Laws of NY; NY Const Art VI, § 9). Accordingly, the caption is amended sua sponte to reflect the only properly named defendant, the State of New York.

Footnote 2:The Court notes that the term "Notice of Claim" is a misnomer in the New York State Court of Claims; the governing statute authorizes the filing of a "claim" or, in the alternative, a "notice of intention to file a claim" (Court of Claims Act §§ 10, 11; see Kolnacki v State of New York, 8 NY3d 277, 280 [2007]).

Footnote 3:By Executive Order 39.1, Governor Hochul extended the terms, conditions and suspensions contained in Executive Order 39 until October 20, 2024.

Footnote 4:The Affirmation in Opposition erroneously opposes the motion filed by Mario's Pizzeria, however the Court will deem it as opposition to the instant motion.